## 47570. BRADDOCK v. THE STATE.

HALL, Presiding Judge. Defendant appeals from the denial of his motion to suppress evidence obtained by an alleged illegal search.

Defendant is a truck driver employed by a man named Christion who owns a truck-tractor. Both defendant and Christion were arrested and indicted for possession of amphetamines. Christion made the first motion to sup-

press and the transcript of his hearing was stipulated as the evidence in this case. The court denied defendant's motion on the same grounds as Christion's and certified the order for immediate review.

The facts developed at the hearing are sketchy. It appears that Christion has some form of contract with Home Transportation, a motor carrier engaged in interstate commerce. An officer of Home Transportation called it a lease of the tractor, but the document itself is not in the record. Two of its provisions were read into evidence and suggest, along with Christion's presence in the truck, that the agreement is one for hauling services by an independent contractor but with stringent control provisions sufficient to meet the requirements of the Interstate Commerce Act. One clause gives Home the right to inspect the equipment for operational safety. The other gives Home the right to terminate immediately if the owner or an employee is found in the possession of alcohol or drugs when hauling goods. Neither one specifically gives Home the right to search for drugs.

Defendant and Christion pulled into Home's terminal after a trip from Alabama. A safety investigator of the Federal Department of Transportation was on the premises conducting a week-long "over-all safety compliance survey." As soon as defendant and Christion left the truck, this inspector came over and told the "driver" (apparently Christion, although this is not clear) that he wanted to inspect the vehicle and asked him to get inside. The inspector made a thorough search including the sleeper berth and a compartment between the seats similar to a glove compartment in an automobile. There he found a bottle of amphetamine capsules. He turned them over to Home's safety director and presumably some Home official called in the police. The only evidence concerning the actions or reactions of Christion and defendant was the inspector's testimony that Christion did not object, i.e., that while he did not actually give permission, he did not question the action either. The trial

court denied the motion on two grounds, that no police action was involved and that Home had consented to the search.

The first ground is erroneous. In 1966, specifically overruling Frank v. Maryland, 359 U. S. 360 (79 SC 804, 3 LE2d 877), the United States Supreme Court declared that administrative searches are governmental action and fall within the protection of the Fourth Amendment. Camara v. Municipal Court of San Francisco, 387 U. S. 523 (87 SC 1727, 18 LE2d 930); See v. Seattle, 387 U. S. 541 (87 SC 1737, 18 LE2d 943). Camara and See involved city fire inspectors. The principle has since been applied to a variety of officials such as inspectors of the Department of Agriculture and the Food and Drug Administration. We see no possible basis for distinguishing the Transportation Department. The State also contends that defendant has no standing to complain of the search. The contention is without merit. He is an aggrieved party under both State and Federal tests. Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697, 78 ALR2d 233); *Wood v. State,* 224 Ga. 121 (160 SE2d 368).

Therefore, the issue is whether the facts of this case fall within any of the limited exceptions to the constitutional requirement for a search warrant. Emergency can be eliminated immediately, leaving for consideration only consent in its various forms. One subgroup of consent is that which is given by implication in the operation of accepted licensing programs. See v. Seattle, supra. One who receives the benefits of a public license to conduct a certain form of business must also accept any reasonable regulations upon the conduct of the business and, of course, any reasonable method of verifying his compliance with the regulations. The Interstate Commerce Act (49 USC §§ 300-327) establishes a licensing system for motor vehicle carriers and Home Transportation operates under a contract motor carrier's permit. The Act and regulations adopted pursuant to it provide for the most

extensive and intensive inspection of carriers, including their vehicles. Since the regulations also prohibit the transportation of certain dangerous drugs in the possession of a driver, "inspection" of vehicles would encompass what is actually a search for these drugs. There is no doubt that Home's own trucks could be searched by Transportation Department inspectors without a warrant and without any necessity for consent further than that which exists by virtue of its operation under the public permit.

This does not answer the question of whether Home can consent to the search of a non-owned vehicle, however. The sufficiency of third-party consent has undergone a distinct reassessment and limitation. In a series of cases the United States Supreme Court has effectively held that the Fourth Amendment protects people, not places; that only the aggrieved person or an expressly authorized agent may waive his rights; and that any power to consent to a search derived from traditional and subtle distinctions in the law of property or agency cannot override that expectation of privacy upon which an individual justifiably relies. Jones v. United States, 362 U. S. 257, supra; Stoner v. California, 376 U. S. 483 (84 SC 889, 11 LE2d 856); Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576). For an excellent discussion of this development, see Comment, 20 J. Pub. L. 319 (1971).

For this reason we cannot say that, standing alone, the interest in the property granted to Home under the lease is sufficient to make its consent binding on the actual aggrieved parties. The facts of every case must be examined in light of the "reasonable expectation of privacy" test. Only after it is determined that the aggrieved party did not have such expectations do the more traditional consent tests come back into play.

Here the problem is also complicated by the fact that the defendant is two steps removed from the purported consenting party. This requires, then, that Christion's position must also be examined. We believe there are two

bases for finding that he consented to the search. The first is his behavior at the scene. Of course, a failure to make prolonged, strenuous objection or to create obstacles does not mean there has been a true consent. United States v. Kramer Grocery Co., 418 F2d 987. On the other hand, we cannot say that coercion is so implicit in the procedure that one can mutely stand by and be presumed to have not consented. United States v. Hammond Milling Co., 413 F2d 608. The court in Kramer made this distinction when it found no consent. There the inspector had forcefully asserted his authority to inspect without a warrant and hinted at the trouble the aggrieved would be in if he continued to object. The aggrieved testified that he had then acquiesced because he had believed the inspector. Here there is nothing comparable in the evidence, only a mute standing by. However, we also believe that Christion is in the same position as Home in terms of implied consent, i.e., he is making profits by the interstate operation of his vehicle under another's permit. As, in effect, a sublicensee, he should be subject to the same regulation and methods of enforcement.

With the court authorized to find both actual and implied consent by Christion, the question then becomes: Does it bind the defendant here? We will leave aside his muteness for the purpose of discussion. As lowest man on the terminal totem pole he was in a pretty poor spot to raise any form of objection and may well have been paralyzed by his dilemma. The key issue is whether he had a reasonable expectation of privacy in the "premises" searched (glove compartment). We believe the court would have been authorized to find he did not. With the owner of the truck actually riding in it, the employee could not reasonably think of it as a personal, private place. It would not compare, for example, to a room maintained in another's house where the expectation would be prima facie. With no reasonable expectation of privacy in the premises, the consent of another with equal or superior possessory or property interests is then sufficient to vali-

date the search. Frazier v. Cupp, 394 U. S. 731 (89 SC 1420, 22 LE2d 684) (where the defendant shared a duffel bag with another man). In this case, Christion's consent was sufficient.

We wish to make clear, however, that we have not announced sweeping powers for inspectors of regulatory agencies or extended implied consent beyond what was said here. The implied consent found in a licensing system covers only the property of the licensee.

Therefore, while the court based its ruling on erroneous grounds, the judgment itself is correct and will not be reversed on appeal. *Atlas Finance Co. v. McDonald,* 110 Ga. App. 32 (137 SE2d 762).

*Judgment affirmed. Pannell and Quillian, JJ., concur.*
SUBMITTED OCTOBER 4, 1972—DECIDED NOVEMBER 7, 1972.

*White, Webb & Jewett, C. Lawrence Jewett, Wilder & Crowder, Charles R. Crowder,* for appellant.
*Ben F. Smith, District Attorney,* for appellee.